OPINION
 

 GONZALEZ, Judge.
 

 This is an appeal from a take nothing judgment in a suit for specific performance of a contract to sell real estate and in the alternative for damages because of wrongful conversion of real estate. Paul McDaniel and Triad Supply Co., plaintiffs-appellants, sued Cecil Carruth, defendant-appel-lee, in a three count petition. Trial was to the court without a jury. After the appellants rested, upon motion of the appellee, judgment was rendered for appellants on count one and a take nothing judgment as to counts two and three. Appellants attempted to limit their appeal to the take nothing judgment on count two. No findings of fact or conclusions of law were requested or filed. We affirm.
 

 Appellants allege that the trial court erred in:
 

 (1) Granting defendant’s motion for directed verdict by failing to adhere to the legal standards governing such motions;
 

 (2) In granting defendant’s motion for directed verdict because it was against the great weight and preponderance of the evidence to find that there was no delivery of a deed;
 

 (3) Even if the trial court held that there was not delivery of a deed, the trial court erred in finding that the Stat
 
 *501
 
 ute of Frauds operated in this case because the delivery of a signed deed to a third party was sufficient memorandum to take the transaction out of the Statute of Frauds and the letter agreement contained a sufficient enough description so as to not violate the Statute of Frauds;
 

 (4) Even if the trial court found no delivery of the deed, the court erred in finding that the action was barred by Statute of Limitations.
 

 In count two, appellants alleged that on January 14, 1972, appellee executed and delivered to McDaniel a letter agreement wherein appellee agreed to sell One Thousand Six Hundred and Nine point Five (1,609.5) acres of land in Cameron County and two Thirty-Five (35) acre tracts in Hi-dalgo County for a purchase price of Two Hundred Sixty Thousand Dollars ($260,-000.00); that all the money that was paid was paid
 
 in cash
 
 over a period of time and that he was ready, willing and able to pay the balance, if any; that appellee executed a Warranty Deed to said properties and delivered it for their benefit to a third party, Judge Fred Newland; that appellee either wrongfully took the deed from New-land or that it was still in the possession of Newland; that appellee failed to return the deed after wrongfully taking it from New-land, that this constituted conversion and trespass and that appellant was entitled to specific performance of the contract and in the alternative to damages of at least Two Million Three Hundred Thousand Dollars ($2,300,000.00) plus One Million Dollars ($1,000,000.00) punitive damages.
 

 Appellee answered that there is no transaction between appellee and Triad Supply Co., Inc., which forms the basis of a cause of action against appellee and, therefore, Triad should be dismissed as party to the suit; that the purported transaction between McDaniel and Carruth had not been consummated because McDaniel had not fully performed his obligations; that the letter agreement made the basis of this suit did not furnish a legal description sufficient to locate the land in question so as to allow the court to enforce the terms of the agreement nor were there any further documents executed by and between the parties from which a description could be obtained; that in the approximately nine years since the execution of the letter agreement, appellants had not asserted any interest nor exercised any dominion or control over the land, nor paid any taxes, nor done anything that would show some indicia of ownership over the land. Appellee denied that he executed and delivered a deed to a third party for the benefit of appellants and alleged that McDaniel had wholly defaulted in the performance of the contract; that the cause of action occurred more than two years and four years prior to the time the suit was filed and, therefore, was barred by limitations or in the alternative that appellants delayed for such a period of time so that laches bars any recovery.
 

 The letter agreement made the basis of this suit is as follows:
 

 “Harlingen, Texas
 

 January 14, 1972
 

 Mr. Paul E. McDaniel 8030 Kirby Drive Suite 205
 

 Houston, Texas 77006
 

 Dear Sir:
 

 As per our conversation of recent date, I agree to deed to you the following properties: Sixteen Hundred acres plus, located approximately ten miles east of Rio Hondo, Texas, referred to as the Ranch and two farms located in Hidalgo County containing more or less thirty acres each, less road, drain ditch and canal right-of-way including 50% of all mineral rights. Purchase price for the above properties to be $247,500.00 $260,000.00 (Two Hundred Forty Seven Thousand Fivo Hundred Dollars), with $30,000.00 payable on February 15, 1972, $30,000.00 payable on March 15, 1972, $15,000.00 payable on April 15, 1972 and $6,000.00 per month thereafter until paid in full. Said $6,000.00 per month to include interest at the rate of 6%.
 

 
 *502
 
 The Deed will be delivered to you upon payment of the first $30,000.00.
 

 Yours truly
 

 (signed)
 

 Cecil Carruth”
 

 McDaniel testified that he had known Carruth since 1949. They became close friends and from 1949 to about 1976, had numerous business deals involving hundreds of thousands of dollars. These deals were in cash and when they were not, they were very loosely documented. McDaniel also testified that he was convicted and sent to the penitentiary for a conspiracy violation involving some stock.
 

 As to the transaction at bar, there was a direct conflict in the testimony. McDaniel testified that he, and his former girlfriend and nephew at his direction, on three different ocassions paid the Seventy Five Thousand Dollars ($75,000.00) down payment called for in the letter agreement. ($30,-000.00 due on February and March 15,1972 and $15,000.00 due on April 15, 1972.) He claimed that they paid cash but that no receipts were given by Carruth and they did not request any. As to the One Hundred Eighty-Five Thousand ($185,000.00) balance of the purchase price McDaniel was unclear as to how much of this, if any, was paid. McDaniel testified that he paid some in cash and that a lot of it was paid as offsets and on other business deals with Carruth and trades for other property. McDaniel did not have an estimate as to the value of these offsets or trades but did testify that he had requested an accounting from Car-ruth (which he claimed Carruth refused to give him) and that he was ready, willing and able to pay the balance, if any.
 

 Carruth and McDaniel had a falling out in about 1975-6 when Carruth told McDaniel that he was not going to sell the property made the basis of this lawsuit to him and instead was going to give the property to the Boy’s Home. The record reflects the following testimony:
 

 “Q (Mr. Bonner — Carruth’s attorney) You didn’t have the same sort of personal relationship you had had in the past; would that be a fair statement?
 

 A (McDaniel) Yes.
 

 Q Was it about this same time that you and Mr. Carruth had a conversation and Mr. Carruth told you that he was going to give the ranch to the Boy’s Home?
 

 A I don’t know what time — I can’t say what time we had that conversation. I can’t pinpoint the date. I know he did. I don’t know the date.
 

 Q Was it during one of his trips to Houston that you had this conversation with him?
 

 A Yes.. With Mr. Carruth?
 

 Q Yes, sir.
 

 A Yes, sir, that was one of his trips.
 

 Q Was that about the time you were negotiating this second set of instruments on the Houston house?
 

 A I don’t know if that would coincide or not. It could be.
 

 Q It could be?
 

 A Yes.
 

 Q So that was ’75 or ’76. You filed this suit in ’79.
 

 A Then it wasn’t then. It was about two and half years before the suit was filed is when I was talking to him and about the Boy’s Home.
 

 Q After you learned this — Mr. Car-ruth had told you he was not going to sell that ranch to you or that you had not bought it- — did you go down and talk to Mr. Newland to get that deed that you say that you had paid for and were entitled to?
 

 A I did not ask for the deed.
 

 Q You didn’t?
 

 A From Mr. Newland, no.
 

 Q Did you ask your attorney to go and talk to Mr. Newland and pick up that deed for you if you were entitled to receive it?
 

 A No, I did not ask him to pick it up.
 

 Q Have you at any time gone to Judge Newland and made demand for that deed?
 

 A No.
 

 Q You have not, even after the suit was filed?
 

 A No.
 

 
 *503
 
 Q Not at any time. If you realized you had a problem and you were entitled to that deed, Mr. McDaniel can you tell me why you didn’t go and pick it up?
 

 A I did not see that it was necessary. He had held the deed to all the other properties all those years and I completely trusted Judge Newland.
 

 Q Judge Newland—
 

 A I never did ask for it back.
 

 Q You didn’t call Fred Newland or make any demand on him for that deed?
 

 A I did not.”
 

 Judge Newland was dead at the time of the trial. Though many opportunities existed to take Newland’s deposition prior to trial, appellants did not avail themselves of these opportunities. Appellee argues that the reason appellants did not take Newland’s deposition was because appellants knew that the transaction had not been consummated.
 

 Carruth was called as an adverse witness. He denied receiving the Seventy Five Thousand Dollars ($75,000.00) and denied the offsets or trades as consideration for the land in question. He further testified that during the time in question, he was holding “hot checks” from McDaniel of approximately Two Hundred Thousand Dollars ($200,000.00).
 

 Regarding the deed, Carruth denied ever signing the deed but did testify that he instructed his attorney, Judge Fred New-land, to prepare a deed and to hold it until he received the payment of the first Thirty Thousand Dollars ($30,000.00) as per the letter agreement. He also denied taking the deed from Judge Newland.
 

 The record also showed that McDaniel, from the date of the letter agreement to the date of the trial (approximately nine years), never exercised any dominion or control over the land, and/or did not pay any taxes nor did anything with the land that would indicate that the transaction had been consummated.
 

 After the plaintiff rested, defendant made a motion for “instructed verdict” as to all counts.
 
 [1]
 
 The court denied the motion on count one but ruled that plaintiff take nothing on counts two and three. In that connection, the court said:
 

 THE COURT: “I do not believe that the plaintiff has proved by a preponderance of the evidence nor established — nor does the Court find that the deed was executed and delivered to him, plaintiff, in Newland’s office. Viewed in the best light of the evidence, a deed was signed, apparently not notarized, and turned over to Fred Newland.
 

 If plaintiff is to be believed, there was no lien in this deed, there was no requirement of a deed of trust or note. This goes against all prior dealings of the parties and strains the credulity of the Court beyond elasticity.
 

 I find as a fact that this just didn’t ever get off the ground. A deed was delivered to Newland, yes, signed, perhaps, but it was not delivered to plaintiff by defendant nor was there ever a delivery. It was turned over to Newland to be used when the sale was consummated and the first $30,000 paid. I find that the sale was never consummated thereafter.
 

 We then come to the statute of frauds that the plaintiff is now seeking to enforce the contract as evidence by the letter from Carruth agreeing to the sale. I think he is barred both by the statute of frauds and the statute of limitations.
 

 The judgment will be that plaintiff take nothing in connection with the 1,609.5 acres curiously referred to as the ranch and the farm.”
 

 The court thereafter recessed the case to the afternoon to consider count one. No further evidence was offered by appellants and appellee rested and re-urged his motion
 
 *504
 
 for “instructed verdict” as to count one also. The court ruled in favor of the appellants on
 
 count one
 
 for rentals collected by appellee for appellants, and awarded appellants a judgment for Thirteen Thousand Eight Hundred Forty Nine and
 
 uAm
 
 Dollars ($13,849.44).
 

 The record contains no findings of fact or conclusions of law or any request for such findings. Where no findings of fact or conclusions of law are requested or filed, an appellate court must presume that every disputed fact issue was found by the trial court in support of the judgment, and the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence.
 
 Bishop v. Bishop,
 
 359 S.W.2d 869 (Tex.1962);
 
 American National Insurance Co. v. Carbajal,
 
 530 S.W.2d 642 (Tex.Civ.App.-Corpus Christi 1975, no writ).
 

 In determining whether there is any evidence to support the trial court’s judgment, we must consider that only evidence most favorable to the trial court’s implied findings and disregard entirely that evidence which is opposed or contradictory in its nature.
 
 Banks
 
 v.
 
 Collins,
 
 152 Tex. 257, 257 S.W.2d 97 (1953);
 
 Renfro Drug Co. v. Lewis,
 
 149 Tex. 507, 235 S.W.2d 609 (1950). The appellant’s “against the great weight and preponderance of the evidence” point requires us to review and weight all the evidence.
 
 In re King’s Estate,
 
 150 Tex. 662, 244 S.W.2d 660 (1951).
 

 Motion For Judgment
 

 Appellants, in their first point of error, contend that the trial court erred in granting appellee’s motion for directed verdict. Specifically, appellants contend that the trial court failed to apply to such motion the same rules which govern the propriety of instructing a verdict in a jury case. We disagree.
 

 If, at the time appellants had rested their case, they had failed to prove all the elements of their cause of action, the appellee upon motion, would have been entitled to a judgment and thereby relieved of the burden of putting on “his side” of the case. This is so because, since the case was tried by the court without a jury, the judge occupied a dual position; he was the magistrate required to lay down the guiding principle of law
 
 and
 
 he was also the tribunal compelled to determine what the facts were. As such the court occupied the same relation to the facts in this case as a jury would have if the case had been tried before a jury. The judge was the trier of the facts and it was his duty to decide the issues of fact on the evidence and the court was not bound to adopt a party’s contention as to the weight of the evidence. It was the court’s right and duty to weight the evidence, and draw inferences and reasonable deductions therefrom. Further, it was the court’s duty to determine the credibility of the witnesses and the weight to be given their testimony in exactly the same manner that a jury would have done. The court had the power to believe or disbelieve all or part of a witness’ testimony.
 
 Hood v. Texas Indemnity Ins. Co.,
 
 146 Tex. 522, 209 S.W.2d 345 (1948);
 
 State v. Lynch,
 
 390 S.W.2d 335 (Tex.Civ.App.—Waco 1965, no writ);
 
 Richardson
 
 v.
 
 Raby,
 
 376 S.W.2d 422, 426 (Tex.Civ.App.—Tyler 1964, no writ);
 
 Moser v. McLemore,
 
 266 S.W.2d 253 (Tex.Cir.App.-Amarillo 1953, no writ); Corpus Juris Secumdum, Trial, Vol. 89, § 574.
 

 In determining the propriety of rendering a judgment for the defendant at the close of the plaintiff’s case the following rules apply:
 

 “A judgment rendered for the defendant at the close of the plaintiff’s case in a non-jury trial is tested
 
 on appeal
 
 under the rules which apply in a jury trial where the court has withdrawn the case from the jury or instructed a verdict against the plaintiff and rendered judgment for the defendant. Only the evidence and inferences therefrom which tend to support the plaintiff’s case may be considered. In this light, if there is no evidence supporting one or more essential elements of the plaintiff’s case, then the court’s action was correct.
 
 Allen v. Nesmith,
 
 525 S.W.2d 943, 945 (Tex.Civ.App.—
 
 *505
 
 Houston [1st Dist.] 1975), writ ref. n.r.e. (Tex.1975) 531 S.W.2d 330;
 
 Burkhardt v. Harris,
 
 200 S.W.2d 445, 446 (Tex.Civ.App.—Austin 1947, no writ).”
 
 City of College Station v. Seaback,
 
 594 S.W.2d 772, 777 (Waco 1979, no writ), (emphasis added)
 

 In the case at bar, after the plaintiff rested, the defendant was free to go forward with his side of the case. Instead, he moved for an “instructed verdict.” This was a misnomer. A judge does not instruct himself to render a verdict. He might, in a proper case, instruct a jury, but not himself. If a defendant chooses not to put on any evidence, he should rest his case and move for judgment. Although the attorneys for the parties did not follow this procedure, this is, in effect, what took place. See Tex.R.Civ.P. 434.
 
 [2]
 
 In this case, when the court granted the defendant’s motion for “instructed verdict” on
 
 count two,
 
 he could have held that the plaintiff’s evidence was insufficient to entitle them to a judgment on the theory that the letter agreement made the basis of this suit, violated the statute of frauds (because the property sought to be conveyed was not sufficiently described to allow the court to order specific performance)
 
 and
 
 also on the theory that as a matter of law the suit was barred by the two year statute of limitations.
 
 [3]
 
 Appellants’ point of error number one is overruled.
 

 Delivery of Deed
 

 In point of error number two, appellants allege that the court committed error in granting appellee’s motion for judgment because it was against the great weight and preponderance of the evidence to find that there was no delivery of the deed.
 

 It is a question of fact for the trier of fact to determine the circumstances of delivery.
 
 Estes v. Reding,
 
 398 S.W.2d 148 (Tex.Civ.App.—El Paso 1965, writ ref’d n.r.e.). Both McDaniel and Carruth testified regarding this matter and gave contradictory testimony. Carruth admitted that he had a deed prepared but there was a conflict as to whether the deed was signed. Carruth denied signing the deed. At any rate, Judge Newland was instructed by Car-ruth to hold it until McDaniel compiled with the terms of the letter agreement, that is, until McDaniel paid the first Thirty Thousand Dollars ($30,000.00). No signed deed was recorded nor was a signed deed introduced into evidence.
 

 Appellants argue that the evidence reflects that a delivery of a deed sufficient to pass title was proven. We disagree. Even if they had proven that the deed was signed by appellee, the mere delivery of a deed to a third party passes no title if the grantor did not intend for same to be effective.
 
 Binford v. Snyder,
 
 144 Tex. 134, 189 S.W.2d 471 (1945);
 
 Woods v. Osborn,
 
 113 S.W.2d 636 (Tex.Civ.App.—Eastland 1938, no writ).
 

 To convey an interest in land, the requirements governing instruments of conveyance as set out in Article 1288 Tex.Rev.Civ.Stat.Ann. (Vernon 1980) must be complied with.
 
 Robert Burns Concrete Contractors, Inc. v. Norman,
 
 561 S.W.2d 614 (Tex.Civ.App.—Tyler 1978, writ ref’d n.r.e.). Those requirements are that the instrument must be (1) in writing, (2) signed, and (3) delivered by the party disposing of the interest or his agent authorized in writing.
 

 In the case at bar, the trial court impliedly found that no deed signed by Car-ruth was delivered to appellants nor to a
 
 *506
 
 third party so as to pass title of the land in question to appellants. Such findings are sufficiently supported by the record. Appellants’ second point of error is overruled.
 

 Statute of Frauds
 

 In the third point of error, appellants assert that the property description in the letter agreement is sufficient to give rise to an enforceable contract.
 

 Tex.Bus. & Com.Code Ann. § 26.01 (Vernon’s 1968) “Statute of Frauds” provides that to be enforceable a contract for the sale of real estate must be in writing. If the land sought to be conveyed is not adequately described, the contract is unenforceable.
 
 Matney v. Odom,
 
 147 Tex. 26, 210 S.W.2d 980 (1948).
 

 “The rule by which to test the sufficiency of the description is so well settled at this point in our judicial history, and by such a long series of decisions by this court, as almost to compel repetition by rote: To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.” (citations omitted)
 
 Morrow v. Shotwell,
 
 477 S.W.2d 538, 539 (Tex.1972).
 

 See
 
 Riebe
 
 v.
 
 Foale,
 
 508 S.W.2d 175 (Tex.Civ.App.—Corpus Christi 1974, no writ);
 
 Simer v. Deupree,
 
 616 S.W.2d 378 (Tex.Civ. App.—Texarkana 1981, writ ref’d n.r.e.).
 

 In the case at bar, the parties never identified the precise land to be conveyed but they did agree on a general area or site, i.e., approximately ten miles east of Rio Hondo, Texas and two thirty-five (35) acre tracts of land in Hidalgo County. The description makes no reference to an existing writing, has not words denoting ownership and is utterly devoid of any descriptive data by which the property can be identified. The court’s implied finding that the property description was insufficient to be an enforceable contract is supported by the record. Appellants’ forth point of error is overruled.
 

 Statute of Limitations
 

 In the fifth point of error, appellants assert that the trial court committed error in impliedly finding that the cause of action was barred by the statute of limitations.
 

 An action brought for failure to perform a real estate contract must be brought within four years.
 
 Finger v. Morris,
 
 468 S.W.2d 572 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref’d n.r.e.). However, if the contract is void for lack of a proper description then the two years statute of limitations is applicable.
 
 Davis v. Greenwood,
 
 374 S.W.2d 741 (Tex.Civ.App.—Texarkana 1963, writ ref’d n.r.e.). In the case at bar, suit was filed in 1979. The statute began running in 1972, at the time the first payment was required or shortly thereafter when the first payment was made. At best it would have begun to run in 1976 when Carruth told McDaniel that he was not going to sell him the land in question but give it to the Boy’s Home. Either way, because of the insufficient legal description, the two year statute was applicable. The trial court’s implied findings that the cause of action was barred by the statute of limitations is also supported by the record. Appellants’ fifth point of error is overruled.
 

 Cross-Point
 

 As a cross-point, appellee seeks to reverse the portion of the judgment in which the trial court granted a Thirteen Thousand Eight Hundred Forty Nine and
 
 44/m
 
 Dollars ($13,849.44) judgment to appellants on
 
 count one
 
 of appellee’s petition. Appellee asserts that the trial court committed error in making the award because there was no evidence or insufficient evidence to support the judgment.
 

 Appellants attempted to limit their appeal to a severable portion of the judgment, i.e., only matters relating to
 
 count two
 
 in the judgment (wherein they received an adverse judgment).
 

 Tex.R.Civ.P. 353 which was in effect at the time appellants attempted to limit their appeal reads as follows:
 

 
 *507
 
 “No attempt to limit the scope of an appeal shall be effective as to a party adverse to the appellant unless the sever-able portion of the judgment from which the appeal is taken is designated in a notice served on the adverse party within fifteen days after the judgment is signed, or, if a motion for new trial is filed by any party, within seventy-five days after the judgment is signed.”
 

 The record shows that appellant
 
 did not
 
 serve notice of such limitation on appel-lee within fifteen days after the judgment was signed. Therefore, the attempted limitation never became effective. Under these circumstances the entire record comes forward on appeal. Tex.R.Civ.P. 353;
 
 City of San Augustine
 
 v.
 
 Roy W. Green Co.,
 
 548 S.W.2d 467, 472 (Tex.Civ.App.—Tyler 1977, writ ref’d, n.r.e.). Therefore, cross-appellant’s (appellee’s) appeal will be considered.
 

 Viewing the evidence presented by cross-appellees (appellants) in a light most favorable to the judgment, we conclude there was some evidence on which the court could have based its findings as to the amount of damages suffered by cross-appel-lees (appellants). Therefore, cross-appel-lees’ cross-point is overruled.
 

 The judgment of the trial court is affirmed.
 

 [1]
 

 . The judgment reads that defendant’s motion for “directed verdict” on counts two and three of plaintiffs second amended original petition was granted. This is equivalent to a motion for judgment. “Motion for Instructed Verdict” is a mechanism employed in
 
 jury
 
 cases. Therefore, we should cease the practice of using them in non-jury cases. See 3 R. McDonald, Texas Civil Practice § 11.25 (rev. 1971);
 
 Lorino v. Crawford Packing Co.,
 
 169 S.W.2d 235, 240 (Tex.Civ.App.—Galveston) aff’d, 142 Tex. 51, 175 S.W.2d 410 (1943).
 

 [2]
 

 . “. ... Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; ...”
 

 [3]
 

 . There was no need for the court to go any further and specifically no need for the court to put on his “fact finder hat” and rule on whether there had been a delivery of the deed. However, since this was done, we will also analyze this matter.