James Max **MOUDY**, as Trustee on behalf of Roy Blackbird, Don Jordan, and Sandra Ross, Independent Executrix of the Estate of Don Sykora, Appellants,

v.

Jayne Johnson **MANNING**, Appellee.

No. 04–01–00742–CV.

Court of Appeals of Texas, San Antonio.

June 28, 2002.

Rehearing Overruled July 19, 2002.

H. Ritman Jons, Attorney At Law, Richard C. Mosty, Stephen B. Schulte, Keith, Weber & Mosty, P.L.L.C., Kerrville, for Appellant.

J. Ken Nunley, Joe M. Davis, Kelly Putney Rogers, Nunley, Davis, Jolley & Hill, L.L.P., Boerne, M. Scott Stehling, Law Offices of M. Scott Stehling, Kerrville, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice and SANDEE BRYAN MARION, Justice.

## OPINION

CATHERINE STONE, Justice.

This appeal involves only one issue, and that is, whether the property description in a land contract satisfies the statute of frauds. We agree with the trial court's determination that the description is insufficient; therefore, we affirm the trial court's judgment.

### BACKGROUND

James Max Moudy entered into a Farm and Ranch Earnest Money Contract ("EMC") with Jayne Johnson Manning for the purchase of 3,948 acres of land in Edwards County, Texas.[1] The contract described the land as "3,948 acres +/-. Exhibit 'A'." Exhibit A, however, contains no further description of the property. The EMC was amended three different times to extend the closing date for the sale. Each amendment describes the property as "3949.62 acres, more or less, 20 miles NE of Rocksprings and 25 miles SW of Junction in NE Edwards County, Texas."

Several months after executing the EMC, Manning obtained a survey indicating that her property actually consisted of 4,571 acres, not 3,948 acres as previously believed. Manning contacted Moudy and notified him that she no longer wished to complete the sale, and would terminate the EMC pursuant to the contract's termination provision. Moudy tendered performance, and Manning refused to close the sale. Moudy filed suit. seeking specific performance of the contract. Manning subsequently moved for summary judgment on a statute of frauds defense, claiming the contract was unenforceable because it did not contain a sufficient

---

1. Moudy was acting as trustee on behalf of      Roy Blackbird, Don Jordan, and Don Sykora.

property description. The trial court granted Manning's motion. On appeal, Moudy contends the trial court erroneously granted summary judgment.

## STANDARD OF REVIEW

We review a summary judgment under a *de novo* standard. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). To prevail on a motion for summary judgment asserting an affirmative defense, the defendant must prove each element of the defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). If the defendant proves the defense, the burden shifts to the plaintiff to produce evidence raising a genuine issue of material fact to avoid the summary judgment. *Id.* In determining whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the non-movant is taken as true, and every reasonable inference is indulged in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## DISCUSSION

■ The trial court granted summary judgment in Manning's favor on the ground that the parties' contract lacked a property description sufficient to satisfy the statute of frauds. The statute of frauds requires that a writing be complete within itself in every material detail and contain all essential elements so that it may be understood without resort to parol evidence. *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972); *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945). No part of the agreement is more essential than the description of the property to be conveyed. *Wilson*, 188 S.W.2d at 152. The agreement must furnish within itself, or by reference to some other existing writing, information by which the land may be identified with reasonable certainty. *Morrow*, 477 S.W.2d at 539; *Wilson*, 188 S.W.2d at 152.

■ During oral argument, Moudy argued that the property description of "3949.62 acres, more or less, 20 miles NE of Rocksprings and 25 miles SW of Junction in NE Edwards County, Texas" is sufficient to satisfy the statute of frauds. We hold that this argument is without merit because the description does not identify the land with reasonable certainty. *See McDaniel v. Carruth*, 637 S.W.2d 498, 506 (Tex.App.-Corpus Christi 1982, no writ) (holding the description "Sixteen Hundred acres plus, located approximately ten miles east of Rio Hondo, Texas, referred to as the Ranch and two farms located in Hidalgo County containing more or less thirty acres each" is insufficient to satisfy the statute of frauds).

■ Land is identified with reasonable certainty whenever the two-part test enunciated in *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222 (1949) is satisfied. Under *Pickett*, land is identified with reasonable certainty when: (1) the contract contains a "statement of ownership" such as "my property," "my land," or "owned by me"; and (2) it is shown by extrinsic evidence that the party to be charged owns only one tract of land fitting the property description in the contract. *Id.* at 223. On appeal, Moudy contends the parties' contract is enforceable because both prongs of *Pickett* are satisfied in this instance. Thus, we must consider: (1) whether the contract contains language indicating that Manning is the owner of the property; and, if it does, (2) whether extrinsic evidence indicates that Manning owns only one tract of land fitting the property description in the contract.

### Statements of Ownership

■ In the case at bar, the land contract provides as follows:

PARTIES: Jayne Johnson Manning (Seller) agrees to sell and convey to James Max Moudy, Trustee (Buyer) and Buyer agrees to buy from Seller the property described below.

PROPERTY: The land situated in Edwards County, Texas, described as follows: 3,948 acres +/-. Exhibit 'A'. or as described on attached exhibit, together with all improvements thereon and all rights, privileges and appurtenances pertaining thereto, including but not limited to: water rights claims and permits, easements, all rights and obligations of applicable governments programs and cooperative or association memberships. Included with the sale are the following items, if any: windmills and tanks, domestic water systems, curtains and rods, draperies and rods, valances, blinds, window shades, screens, shutters, swings, wall-to-wall carpeting, mirrors fixed in place, ceiling fans, attic fans, mail boxes, television antennas and satellite dish with controls, permanently installed heating and air-conditioning units and equipment, window air-conditioning units, built-in security and fire detection equipment, lighting and plumbing fixtures, water softener, built-in kitchen equipment, garage door openers with controls, built-in cleaning equipment, all swimming pool equipment, shrubbery, permanently installed outdoor cooking equipment, built-in fireplace screens **and all other property owned by Seller and attached to the above described real property.**

Moudy contends the bolded contractual language, "and all other property owned by Seller and attached to the above described real property," satisfies the "state-ment of ownership" prong of *Pickett.* We disagree.

We believe this clause, when read in the context of the property description, merely indicates that Manning owns the personal property attached to the land—not the real property itself. Thus, we cannot conclude that the clause satisfies the first prong of *Pickett,* which requires a statement of ownership as to the real property.

■ Moudy also contends the contract satisfies the first prong of *Pickett* because: (1) Manning is identified as the "Seller" and agrees to sell and convey the Property; (2) Seller shall furnish to Buyer at Seller's Expense an Owner policy of Title Insurance; (3) Seller shall deliver possession of the Property to Buyer on Closing; (4) Seller to provide a title insurable sixty (60) foot wide easement to the Property; (5) Seller and Buyer are to split hunting lease payments from the property; and (6) Seller and Buyer acknowledge that it is the intent of the each to complete an IRS Code Section 1031 tax deferred exchange. We hold Moudy's argument is without merit because we cannot infer Manning's ownership from the fact that she was the person agreeing to sell the property. *See Wilson,* 188 S.W.2d at 154 (holding it is not a necessary inference that one owns property simply because she contracts to sell it).

■ Lastly, Moudy cites a provision from the addendum to the contract in support of his contention that the contract contains "statements of ownership." The addendum provides as follows:

If Closing occurs before November 1, 1998, Buyer and Seller shall split 50/50 all 1998 hunting payments; if Closing occurs between November 1, 1998, and December 31, 1998, all 1998 hunting payments shall be prorated between Seller and Buyer based on the number of days of **their respective ownership**

**730**

of the Property during that specific time period.

Moudy contends the bolded contractual language, "their respective ownership of the Property during that specific time period," satisfies the "statement of ownership" prong of *Pickett*. We disagree.

We cannot sustain Moudy's argument because the clause is not a clear statement of current ownership, and leaves Manning's interest to conjecture. *See Thomason v. Rigney*, 314 S.W.2d 450, 453 (Tex. Civ.App.-Texarkana 1958, writ ref'd n.r.e.) (holding the clause "as their interests may appear" does not satisfy the first prong of *Pickett* because it is plainly prospective, not referring to an existing interest at the time the contract was made). Accordingly, we hold the clause is not a statement of ownership sufficient to satisfy the first prong of *Pickett*. In light of our holding that the contract lacks a sufficient statement of ownership, we need not address Moudy's claim that other public property records provide a full description of the property.

### CONCLUSION

Based on the foregoing, we hold the parties' contract does not satisfy the statute of frauds because it fails to identify the land with reasonable certainty. *See Pickett*, 223 S.W.2d at 223. Therefore, we affirm the trial court's judgment.