

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00300-CV

**GARY AND THERESA POENISCH FAMILY LIMITED PARTNERSHIP**,
Appellant

v.

**TMH LAND SERVICES, INC.**,
Appellee

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 19-02-00030-CVK
Honorable Russell Wilson, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 15, 2021

AFFIRMED

Appellant Gary and Theresa Poenisch Family Limited Partnership ("Poenisch") appeals a summary judgment rendered in favor of appellee TMH Land Services, Inc. ("TMH"). In this suit to enforce a contract for the sale of an overriding royalty interest, the trial court determined the contract did not contain a legal property description sufficient to satisfy the statute of frauds. On appeal, Poenisch argues: (1) the email agreement between the parties was sufficient because it described the real property with reasonable certainty; and (2) TMH failed to raise a material issue

of fact on its affirmative defenses of anticipatory repudiation and failure to perform within a reasonable time. We affirm the trial court's judgment.

## BACKGROUND

Poenisch and TMH, among others, jointly owned an overriding royalty interest in a mineral lease ("the Wiatrek Lease"). At some point, the Wiatrek Lease became the subject of a lawsuit ("the Wiatrek lawsuit") that could have resulted in termination of the lease, thereby extinguishing the overriding royalty interest partially owned by Poenisch and TMH. Another company, GulfTex Energy IV, LP ("GulfTex"), was in a position to settle the Wiatrek lawsuit; however, GulfTex would not settle the lawsuit unless it could buy down the overriding royalty interest in the Wiatrek Lease.

Each of the overriding royalty interest owners, except Poenisch, agreed to GulfTex's proposal to reduce the overriding royalty interest. Poenisch informed Jonathan Floyd, the spokesperson for the overriding royalty interest owners, it would agree to the GulfTex proposal if it could acquire one of the other owner's share of the overriding royalty interest. Because the GulfTex proposal would reduce the overriding royalty interest, Poenisch sought to increase its share of the interest by acquiring another owner's share.

Trae Ellerbe, president of TMH, informed Floyd that TMH would be willing to sell its share of the overriding royalty interest to Poenisch because TMH "want[ed] out of this deal all the way around." On December 21, 2017, Ellerbe sent an email to Floyd and Clinton Butler—the attorney representing the overriding royalty interest owners in the GulfTex settlement—stating: "Pursuant to my conversation with [Floyd], I will sell my retained ORR[1] in the Gulftex proposed 300+ acre unit for $20,000."

---

[1] Overriding royalty interest.

Butler sent an email to Poenisch stating TMH would sell its share of the overriding royalty interest for $20,000 and asked if Poenisch would agree to the deal. Poenisch's counsel replied: "We have a deal." On February 5, 2018, Poenisch's counsel sent an email to Butler stating he "will draft up the Ellerbe assignment of ORRI and send your way for review." Poenisch's counsel never sent the draft "Ellerbe assignment" and no further steps were taken to consummate the transaction.

Nevertheless, Butler informed GulfTex that all the overriding royalty interest owners agreed to GulfTex's proposal to buy down the interest. GulfTex and the overriding royalty interest owners, including Poenisch, executed an assignment memorializing the buydown and reduction of the overriding royalty interest in the Wiatrek Lease ("the GulfTex Assignment"). TMH retained its share of the overriding royalty interest in the GulfTex Assignment.

Sometime in 2018, the Wiatrek lawsuit settled and GulfTex began producing minerals under the Wiatrek Lease. On December 4, 2018, Poenisch sent a letter to TMH seeking to enforce the December 21, 2017 email chain as a binding contract and requesting TMH sell its share of the overriding royalty interest for $20,000. When TMH refused to sell its share of the overriding royalty interest for $20,000, Poenisch filed this lawsuit seeking specific performance.

In the trial court, Poenisch filed a motion for partial summary judgment[2] claiming the parties had a valid and enforceable contract and sought specific performance of the December 21, 2017 email as well as additional damages from the breach. TMH filed a competing motion for summary judgment claiming "there is no contract between [the parties]" and Poenisch's claims are barred by the statute of frauds. In the alternative, TMH argued summary judgment is inappropriate because there are fact issues on whether Poenisch failed to perform within a reasonable time and

---

[2] Poenisch did not seek a summary judgment on its claim for promissory estoppel.

whether Poenisch's failure to perform within a year implied an anticipatory repudiation of the contract.

The trial court granted TMH's motion for summary judgment because it determined the December 21, 2017 email chain did not contain a legal property description sufficient to satisfy the statute of frauds. This appeal followed.[3]

## STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

## STATUTE OF FRAUDS

The trial court granted summary judgment in favor of TMH because the parties' contract lacked a legal property description sufficient to satisfy the statute of frauds. The statute of frauds requires contracts for the sale of real property to be in writing and signed by the person to be charged. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4); *see also* TEX. PROP. CODE ANN. § 5.021. "An overriding royalty interest in an oil and gas lease is considered an interest in real estate that falls within the statute of frauds." *Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007). To satisfy the statute of frauds, "a contract must furnish within itself, or by reference to some other

---

[3] Poenisch non-suited its promissory estoppel claim without prejudice so the trial court's order regarding the summary judgments could become a final and appealable judgment.

existing writing, the means or data by which the property to be conveyed may be identified with reasonable certainty." *Long Trs. v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (internal quotations and alterations omitted). "No part of the agreement is more essential than the description of the property to be conveyed." *Moudy v. Manning*, 82 S.W.3d 726, 728 (Tex. App.—San Antonio 2002, pet. denied). "[O]ne of the most essential elements of a contract for the conveyance of . . . an overriding royalty interest is a description of the lease from which it comes; for it is the lease which denotes the life and breadth of the estate to be assigned." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 742 n.2 (Tex. 2020). "Even if the record is clear that the parties to the contract knew and understood what property was intended to be conveyed, the knowledge and intent of the parties will not make the contract valid." *Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, 469 S.W.3d 280, 295 (Tex. App.—San Antonio 2015, no pet.). "If the contract does not sufficiently describe the real property interest to be conveyed, the conveyance is void under the [s]tatute of [f]rauds and will not support an action for specific performance or breach of contract." *Id.*

"The sufficiency of a legal description in any instrument transferring a property interest is a question of law . . . ." *Id.* "The Texas Supreme Court has acknowledged that Texas employs a strict application of the statute of frauds for interests in land, but nonetheless allows for a liberal construction of the words describing the land." *Carpenter v. Phelps*, 391 S.W.3d 143, 148 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Gates v. Asher*, 280 S.W.2d 247, 248 (Tex. 1955)). "The property description must furnish enough information to locate the general area as in identifying it by tract[,] survey[,] and county, as well as to determine the size, shape, and boundaries of the property." *Anderson Energy Corp.*, 469 S.W.3d at 295 (internal quotations omitted). Thus, a description of real property must be reasonably certain so that a party familiar with the locality could identify the property to the exclusion of other property. *Gaut v. Daniel*,

293 S.W.3d 764, 767 (Tex. App.—San Antonio 2009, pet. denied). "When the language in the contract furnishes a 'key or nucleus' description of the property, extrinsic evidence may then be used merely as an aid to identify the property with reasonable certainty from the data contained in the contract, not to supply a missing description." *Anderson Energy Corp.*, 469 S.W.3d at 295–96. Under this nucleus description theory, a property description may identify the property "with reasonable certainty when: (1) the contract contains a 'statement of ownership' such as 'my property,' 'my land,' or 'owned by me'; and (2) it is shown by extrinsic evidence that the party to be charged owns only one tract of land [, or only one interest in real property,] fitting the property description in the contract." *Moudy*, 82 S.W.3d at 728 (quoting *Pickett v. Bishop*, 223 S.W.2d 222, 223 (Tex. 1949)).

However, "[e]xtrinsic evidence may be used 'only for the purpose of identifying the property with reasonable certainty from the data' contained in the contract, 'not for the purpose of supplying the location or description of the property.'" *Gaut*, 293 S.W.3d at 767 (alterations omitted) (quoting *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983)). This court has previously held:

> The certainty of the contract may be aided by parol only with certain limitations. **The essential elements may never be supplied by parol**. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the [contract].

*Gaut*, 293 S.W.3d at 767 (emphasis in original) (quoting *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945)).

Here, the only description of the property in the proffered contract is the December 21, 2017 email stating: "I will sell my retained ORR in the Gulftex proposed 300+ acre unit for

$20,000."[4]  Poenisch argues the property can be identified with reasonable certainty because the description contains a statement of ownership, and statements in Ellerbe's deposition show that TMH owned only one overriding royalty interest.  We disagree.

The December 21, 2017 email does not contain the means or data by which the property can be identified nor does it contain a "key or nucleus" description of the property.  Based on the description, a person familiar with the locality would not be able to determine what percentage of the overriding royalty interest is being conveyed; the general area of the property covered by the mineral lease; or the size, shape, or boundary of the property covered by the mineral lease.  The descriptive language used in this email is vitally lacking in definiteness.  *See Matney v. Odom*, 210 S.W.2d 980, 982 (Tex. 1948) (holding a description that contained survey, county, and size of the property lacked in definiteness because it did not refer to the shape or boundaries of the property).  Poenisch argues all these descriptive terms can be determined with extrinsic evidence.  However, there must be a "key or nucleus" description of the property before extrinsic evidence can be introduced to identify the property with reasonable certainty.  *See Anderson Energy Corp.*, 469 S.W.3d at 295–96.  Moreover, extrinsic evidence may be used only for the purpose of identifying the property with reasonable certainty from the data contained in the contract, not for the purpose of supplying the location or description of the property.  *Gaut*, 293 S.W.3d at 767.  As such, Poenisch's reliance on extrinsic evidence to supply the location or description of the property burdened by the Wiatrek Lease is improper and does not satisfy the statute of frauds.

---

[4] Poenisch also claims two other emails where Butler stated TMH was willing to sell its ORRI constitute statements of ownership.  However, those emails are less descriptive than the December 21, 2017 email and Butler cannot make a statement of ownership for property owned by TMH.  *See Cavazos v. Cavazos*, 246 S.W.3d 175, 179 (Tex. App.—San Antonio 2007, pet. denied) (indicating a statement of ownership cannot be made by individual who does not have authority to sell the property at issue).

In the alternative, Poenisch argues the December 21, 2017 email refers to the GulfTex Assignment—and the letter agreement preceding the GulfTex Assignment—which each contain a sufficient description of the property. However, a close reading of the email shows that Poenisch's argument is without merit. The December 21, 2017 email refers to "the GulfTex proposed 300+ acre unit." We cannot say the reference to a proposed GulfTex 300+ acre unit is a reference to the GulfTex Assignment or letter agreement. In the email, TMH did not refer to the GulfTex Assignment or letter agreement. Additionally, the GulfTex Assignment and letter agreement expressly state they only "cover[] 177.98 acres of land." While it is unclear what "300+ acre unit" Ellerbe was referring to in the email, it is clear this is not a sufficient reference to the 177.98-acre GulfTex Assignment or letter agreement. *See Davis v. Mueller*, 528 S.W.3d 97, 102 (Tex. 2017) ("[A] reference to an unidentified portion of a larger, identifiable tract is not sufficient to satisfy the [s]tatute of [f]rauds."); *see also Gates*, 280 S.W.2d at 248 (holding Texas employs a strict application of the statute of frauds for interests in real property).

We hold the contract here contains an inadequate property description and the statute of frauds precludes Poenisch's claims as a matter of law. Accordingly, Poenisch's first issue is overruled.

### AFFIRMATIVE DEFENSES

In its second issue, Poenisch claims TMH failed to raise issues of material fact on its affirmative defenses of anticipatory repudiation and failure to perform within a reasonable time. Having determined the statute of frauds bars Poenisch's claims, we need not address Poenisch's second issue.

### CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice