**McKINLEY IRON WORKS, INC., Appellant,**

v.

**TEXAS EMPLOYMENT COMMISSION and Jose Hernandez, Appellees.**

No. 2–95–128–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 29, 1996.

S.C. Cocanower, Cocanower & Robbins, Fort Worth, for appellant.

Dan Morales, Attorney General; Jorge Vega, First Assistant Attorney General; Laquita Hamilton, Deputy Attorney General for Litigation; Lucy Glover, Assistant Attorney General, Chief, Taxation Division; Bill Kimbrough, Assistant Attorney General, Austin, for appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

McKinley Iron Works, Inc. appeals a judgment upholding the Texas Employment Commission's (TEC) decision that employee Jose Hernandez is entitled to receive unemployment benefits. We agree with the trial court that there was substantial evidence to support the TEC decision, and we affirm.

On April 22, 1993, McKinley filed suit for trial de novo review of a TEC decision allowing Hernandez the unemployment benefits. The trial court's review was governed by article 5221b–4(i) of the Texas Revised Civil Statutes.[1] When McKinley rested its case in a bench trial, the court rendered judgment affirming the TEC decision.

McKinley brings five points of error, each asserting a different reason to support its complaint that the trial court erred in granting TEC and Hernandez an "instructed verdict." TEC replies that use of the term

1. Act of May 12, 1993, 73rd Leg., R.S., ch. 269 § 1, 1993 Tex.Gen.Laws 987, 1106 (recodified at TEX.LABOR CODE ANN. § 212.201 (Vernon Pamph. 1996)).

"instructed verdict" is a misnomer, because a judge does not instruct himself to render a verdict in a bench trial. *McDaniel v. Carruth*, 637 S.W.2d 498, 505 (Tex.App.—Corpus Christi 1982, no writ). When a defendant in a non-jury trial wishes to rest his case without putting on any evidence, he should move for judgment, not an instructed verdict. *Id.*

TEC/Hernandez initially moved for judgment, but apparently created the misnomer by later moving for a *directed* judgment. After hearing arguments by the attorneys, the trial court announced that TEC/Hernandez' motion for "directed verdict" would be granted.

Because each of the five points of error attack the so-called "instructed verdict" on grounds that require us to determine whether the trial court properly applied the substantial evidence rule, we will not address the points separately, but will consider them together.

■ When a statute allows trial de novo review of a state agency's decision, this means there can be a trial, but only to determine the issues of whether the agency's ruling is free of the taint of any illegality and is *reasonably supported by substantial evidence*. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex.1984). "Substantial evidence" means that, upon the evidence as a whole, reasonable minds could have reached the same conclusion the agency reached. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Dotson v. Texas State Bd. of Medical Examiners*, 612 S.W.2d 921, 922 (Tex.1981).

■ Principles that govern a trial court's *substantial evidence review* are: (1) the court will hear and consider evidence to determine whether reasonable support for the agency's order exists, but the agency remains the primary fact finding body, and the question for the trial court is strictly one of law; (2) the trial court may not substitute its own judgment for that of the state agency on controverted issues of fact; (3) if the agency heard substantial evidence that would support either an affirmative or a negative finding, the trial court must allow the agency's order to stand, even if the court would have differed with the result; (4) the trial court may not set aside the agency's ruling merely because there was conflicting or disputed testimony; and (5) the trial court is concerned only with the *reasonableness* of the agency's order, not its correctness. *Firemen's & Policemen's Civil Serv. Comm'n*, 662 S.W.2d at 956.

■ Under these principles, if there was substantial evidence which supports the agency's ruling, the trial court must yield to the discretion that was exercised by the agency empowered by law to make that ruling. *Id.* When conducting the trial de novo, the trial court may go no further than to examine the evidence heard by the agency and determine whether it was incredible, perjured, or unreasonable, *id.*; *Trapp v. Shell Oil Company*, 145 Tex. 323, 198 S.W.2d 424, 440 (1946), because evidence in those categories is deemed not substantial. *Trapp*, 198 S.W.2d at 440.

■ Evidence heard by an agency may even preponderate *against* its own ruling, yet still be "substantial evidence," if it is more than a mere scintilla. *City of El Paso v. Public Utility Comm'n of Texas*, 883 S.W.2d 179, 185 (Tex.1994). Because of this, a reviewing court may not substitute its own judgment as to the *weight* of the evidence for that of the agency, and the reviewing court must concern itself with the reasonableness of the agency's order, not its correctness. *Id.* Accordingly, our inquiry is not whether the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether it acted arbitrarily and without regard to the facts. *Trapp*, 198 S.W.2d at 441 (citing *Railroad Comm'n v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1029 (1942)).

■ McKinley argues that TEC's lawyer apparently misled the trial court to a mistaken conclusion that the court was limited to considering the TEC record. McKinley asserts that trial de novo requires the introduction of evidence in court, and that "the factual findings [by TEC] are not even relevant nor admissible evidence in a trial de novo." For this, McKinley relies on *Mary Lee*

*Found. v. Texas Employment Comm'n,* 817 S.W.2d 725, 727 (Tex.App.—Texarkana 1991, writ denied) which holds that a court reviewing a TEC ruling must look to the evidence presented in the trial de novo and not to the record created by the agency. *Id.* *Mary Lee* concludes that evidence heard by TEC is not per se admissible in the trial de novo, unless admissible on its own merits under the general rules of evidence. *Id.* In *Mary Lee,* the trial court admitted the TEC record into evidence over the objection of the employer. *Id.* at 727. *Mary Lee* also suggests that if the TEC's fact findings were admissible proof of their own truth in a trial de novo, a substantial evidence review would be meaningless, "because the TEC could bootstrap itself to substantial evidence in every case merely by finding what it needed to prove." *Id.* at 728.

Thus, McKinley concedes that TEC decisions are reviewable under the "substantial evidence trial de novo standard," but contends the standard mandates a trial de novo without regard to the evidence heard by TEC. McKinley's premise is correct, *unless* evidence from the TEC's hearing is properly introduced and admitted in the trial court. *Arrellano v. Texas Employment Comm'n,* 810 S.W.2d 767, 770 (Tex.App.—San Antonio 1991, writ denied); *Texas Employment Comm'n v. City of Houston,* 616 S.W.2d 255, 258 (Tex.Civ.App.—Houston [1st Dist.] 1981), *writ ref'd n.r.e. per curiam,* 618 S.W.2d 329 (Tex.1981). In our case, the record of Hernandez' TEC hearing was properly introduced and admitted in the trial court.

 McKinley now complains on appeal that the TEC record lacked relevance and admissibility, yet the record was sponsored and offered as evidence in the trial court by McKinley, not TEC/Hernandez. At the trial, McKinley offered the TEC record in segments, as plaintiff's exhibits 3, 4 and 5. TEC/Hernandez made no objections, and the trial court admitted the exhibits. The opposing lawyers even *stipulated* the admissibility of the TEC's findings and decision. We hold that any objections McKinley may wish to assert to its own exhibits were waived when McKinley's offers were admitted by the court with no objection by TEC/Hernandez. *See*

Tex.R.Civ.Evid. 103. McKinley now argues that after resting its case, the only trial court evidence supporting the TEC ruling was the ruling itself, a part of McKinley's own exhibit 3. The argument implies, incorrectly, that TEC/Hernandez then had the burden of going forward with the introduction of evidence to *support* the TEC findings. Imposing such a requirement on TEC misplaces the burden of proof. McKinley, as a party seeking to overturn an agency's decision, had the burden of showing that the decision was *not* supported by substantial evidence. *Mary Lee,* 817 S.W.2d at 727. We hold that McKinley did not carry its burden.

The TEC record, properly admitted in evidence at trial, contains the TEC's findings and decision (McKinley exhibit 3), McKinley's written response to Hernandez' claim for benefits (Mckinley exhibit 4), and Hernandez' written statement of facts about his claim for benefits (McKinley exhibit 5). Although McKinley does not challenge any of the TEC record as inadmissible hearsay, we note that even inadmissible hearsay admitted without objection has probative value. *See* Tex.R.Civ.P. 802.

The TEC record shows that the TEC hearing was held and these findings of fact were made:

Prior to filing an initial claim for benefits with an effective date of April 26, 1992, the claimant was last employed by McKinley Iron Works, Inc., from September, 1991 to April 24, 1992 as a grinder. He was discharged for loafing on the job.

On the morning of April 24, 1992, the claimant was observed not working by an independent contractor hired by the employer to improve productivity. This incident was reported to the employer, but the claimant was not warned. Later that day, the employer personally observed the claimant not working. However, as soon as the claimant saw the employer he resumed his duties. Finally, approximately thirty minutes prior to the end of the claimant's shift, the employer again noticed the claimant standing and staring off blankly. The employer approached the claimant, grabbed his shirt and told him to go home. The employer spoke to the

claimant in broken Spanish because the claimant does not speak English.

The employer insists that she did not intend to discharge the claimant, but rather, meant to send him home to think about whether he wanted to keep his job. The employer testified that this was a common disciplinary measure and therefore, assumed that the claimant would return to work the following Monday. The claimant contends that he understood the employer to mean that he was being discharged. The claimant did not realize why he was being sent home. The claimant denies receiving any prior warnings for loafing on the job.

Upon these findings, the TEC made conclusions, which cite law applicable to the Hernandez claim and include the following:

The claimant in this case was discharged after the employer observed him loafing on the job. Although the employer did not intend to discharge the claimant, but rather meant to send him home early to think about his job, the weight of evidence indicates that the employer did not adequately explain that he was expected to return to work the following week. This lack of communication led the claimant to reasonably believe that he had been permanently discharged from his job. Finally ... there is no evidence that the claimant was ever formally warned that the employer was displeased by his lack of effort. Accordingly, I hold that the claimant was not discharged for misconduct connected with the work. Therefore, the prior determination disqualifying the claimant from benefits will be reversed.

We hold that TEC did hear substantial evidence that supports its ruling in this case. We are not persuaded that such evidence was incredible or unreasonable, and there is no suggestion that it was perjured. We must yield to the discretion exercised by the TEC in making its findings of fact and conclusions. *Firemen's & Policemen's Civil Serv. Comm'n*, 662 S.W.2d at 956. We hold that in this case the TEC did not act arbitrarily or without regard to the facts or law, and the TEC ruling and order entitling Hernandez to receive unemployment benefits were reasonable.

Each of McKinley's points of error is overruled and the judgment of the trial court is affirmed.