ACCEPTED
15-24-00079-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/28/2025 1:51 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00079-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/28/2025 1:51:09 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth Judicial District, Austin, Texas

KENEDY COUNTY WIDE SCHOOL DISTRICT,
*Plaintiff-Appellant,*
v.
GLENN HAGER, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY,
*Defendant-Appellee.*

On Appeal from the
353rd Judicial District Court, Travis County, Texas

## APPELLEE'S BRIEF

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief, General Litigation Division

THOMAS BEVILACQUA
Texas Bar No. 00793342
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel : (512) 936-1162
Fax: (512) 320-0667
thomas.bevilacqua@oag.texas.gov

Counsel for Appellee

**ORAL ARGUMENT NOT REQUESTED**

## IDENTITY OF THE PARTIES AND COUNSEL

**Plaintiff-Appellant:**
Kenedy County-Wide Common School District

**Appellate Counsel for Appellant:**

Judith A. Hargrove
Texas Bar No. 11595050
Tel.: (512) 750-0338
judy@hargrovelawtx.com

Hargrove Law
2029 Dorothy
Sealy, Texas 77474

**District Court Counsel for Plaintiff:**

Jim L. Lambeth
Tel.: (903) 597-2897
Fax: (903) 597-2402
Jim.Lambeth@lgbs.com
Edward J. (Nick) Nicholas
Tel.: (713) 844-3405
Fax: (713) 844-3502
nich.nicholas@lgbs.com

Linebarger Goggan Blair &
Sampson, LLP
1517 W. Front St., Suite 202
Tyler, Texas 75702

**SOAH Counsel for Plaintiff:**

Jim L. Lambeth
Tel.: (903) 597-2897
Fax: (903) 597-2402
jim.lambeth@lgbs.com

Linebarger Goggan Blair &
Sampson, LLP
1517 W. Front St., Suite 202
Tyler, Texas 75702

**Defendant-Appellee:**
Glenn Hegar, Texas Comptroller of Public Accounts, in His Official and Individual
Capacity

**Appellate Counsel for Appellee:**

Thomas Bevilacqua
Assistant Attorney General
Tel.: (512) 936-1162
Fax: (512) 320-0667
thomas.bevilacqua@oag.texas.gov

General Litigation Division, Office of the
Attorney General
P.O. Box 12548, Capitol Station Austin,
Texas 78711-2548

**District Court Counsel for Defendant:**

Samantha E. Tracy
Assistant Attorney General
Tel.: (512) 936-0750
Fax: (512) 320-0667

samantha.tracy@oag.texas.gov

General Litigation Division, Office of the Attorney General
P.O. Box 12548, Capitol Station Austin, Texas 78711-2548

**SOAH Counsel for Defendant:**

Cristina Vudhiwat
Senior Counsel, Fiscal & Agency Affairs
Legal Services Division
Tel.: (512) 463-3148
Fax: (512) 463-4876
cristina.vudhiwat@cpa.texas.gov

Property Tax Assistance,
Comptroller of Public Accounts
1711 San Jacinto Blvd., Third Floor
Austin, Texas 78701

# TABLE OF CONTENTS

Identity of the Parties and Counsel ................................................................. ii

Table of Contents ......................................................................................... iv

Index of Authorities .................................................................................... vi

Statement of the Case................................................................................ viii

Statement Regarding Oral Argument ..............................................................x

Statement of the Issues Presented ................................................................ xi

Statement of the Facts ...................................................................................1

Summary of the Argument.............................................................................4

Argument.......................................................................................................4

   I.   Standard of Review.............................................................................4

   II.  The Comptroller's Decision Should Be Affirmed Because It Is "Reasonably Supported by Substantial Evidence" and the Comptroller Did Not "Act[] Arbitrarily and Without Regard to the Facts."..................................7

      A.  Issue presented on appeal.................................................................7

      B.  The Comptroller must determine either "taxable value" or "productivity value," depending upon the type of property studied....................................8

      C.  The Comptroller has no authority to adjust "productivity value" to account for ARB orders. ...........................................................................11

         1.  Kenedy CSD's attempt to read the term "productivity value" into section 403.302(b)(4) is improper and unsupported............................................11

         2.  The taxable value of the native pasture land is equal to its productivity value....................................................................................15

         3.  Although Kenedy CSD misstates the Comptroller's position, taxable value, market value, and productivity value remain distinct concepts. ...16

      D.  The Comptroller's manuals are consistent with the statutory scheme, which authorizes ARB adjustments to "taxable value" only................................19

      E.  In the alternative, Kenedy CSD failed to prove the amount of its proposed ARB adjustment. ........................................................................21

PRAYER .....................................................................................................23

Certificate of Compliance .................................................................25

Certificate of Service .......................................................................25

# INDEX OF AUTHORITIES

**Cases**

*All by Grace Home Health Care v. Texas HHS Comm'n*,
No. 08-22-00223-CV, 2023 Tex. App. LEXIS 6134 (Tex. App.-El Paso Aug.
14, 2023, pet. denied)........................................................................................5, 7

*Dyer v. Texas Comm'n on Envtl. Quality*,
646 S.W.3d 498 (Tex. 2022) ..................................................................................6

*ExxonMobil v. Coleman*,
512 S.W.3d 895 (Tex. 2017)..................................................................................14

*H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*,
36 S.W.3d 597 (Tex. App.-Austin 2000, pet. denied)............................................7

*McKinley Iron Works v. Texas Emp't. Comm'n*,
917 S.W.2d 468 (Tex. App.-Fort Worth 1996, no pet.) .........................................7

*Michael Nazarian MD Assoc. LLC v. Aetna Life Ins. Co.*,
No. 02-22-00109-CV, 2023 Tex. App. LEXIS 2796 (Tex. App. Fort Worth-Apr.
27, 2023, no pet.) ...................................................................................................5

*Morath v. Texas Taxpayer & Student Fairness Coal.*,
490 S.W.3d 826 (Tex. 2016) ..................................................................................9

*Railroad Comm'n v. Torch Operating Co.*,
912 S.W.2d 790 (Tex. 1995) ..................................................................................6

*Texas Dep't of Pub. Safety v. Franklin*,
No. 04-98-00941-CV, 1999 Tex. App. LEXIS 6775 (Tex. App.-San Antonio,
Sept. 8, 1999, no pet.) ............................................................................................6

*Texas Health Facilities Comm'n v. Charter Med.-Dallas*,
665 S.W.2d 446 (Tex. 1984) ..................................................................................6

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011)........................................................................ 13, 20

*Upper Trinity Reg'l Water Dist. v. National Wildlife Fed'n*,
514 S.W.3d 855 (Tex. App.-Houston [1st Dist.] 2017, no pet.) ...........................8

**Statutes**

Tex. Const. art. II, § 1 ...........................................................................................20
Tex. Const. art. VIII, §§ 1-d, 1-d-1 .......................................................................10
Tex. Gov't Code § 403.301.......................................................................................9
Tex. Gov't Code § 403.302........................................................................... passim

Tex. Gov't Code § 403.303 ................................................................... 5, 7, 13

Tex. Gov't Code § 403.304 ...........................................................................9

Tex. Gov't Code § 2001.174 .........................................................................5

Tex. Tax Code § 1.04 .................................................................................10

Tex. Tax Code § 23.41 ...............................................................................10

Tex. Tax Code § 23.51 ...............................................................................11

Tex. Tax Code § 23.52 ...............................................................................11

Tex. Tax Code § 41.41 ...............................................................................12

Tex. Tax Code § 41.43 ...............................................................................12

## STATEMENT OF THE CASE

*Nature of the Case:*   Kenedy County-Wide Common School District (Kenedy CSD or Appellant) protested and objected to the preliminary value findings made by the Comptroller's Property Tax Assistance Division (PTAD) in preparing the statutorily required 2021 school district Property Value Study (PVS). SOAH-004723.

*Trial Court:*   Under Texas Government Code section 403.303(d), the Honorable Maya Guerra Gamble, 353rd Judicial District Court of Travis County, heard Kenedy CSD's appeal of the Comptroller's Decision overruling Kenedy CSD's protest to the Comptroller's preliminary findings of school district property values to be used in the 2021 PVS.

The Honorable Kathy Pickup, Administrative Law Judge, Texas State Office of Administrative Hearings (SOAH) heard the administrative protest of the preliminary school district property values findings for the 2021 PVS.

*Course of Proceedings:*   The administrative protest hearing occurred before SOAH on November 2, 2022 (SOAH-004729 to SOAH-004948), the ALJ issued her Proposal for Decision on January 31, 2023 (SOAH-004677), the Comptroller issued his final Decision on March 9, 2023 (SOAH-004715), and the 353rd Judicial District Court heard oral argument on the administrative appeal (RR-1) and issued its Final Order on May 22, 2024 (CR-44).

*Trial Court Disposition:*   In her January 31, 2023 Proposal for Decision, ALJ Pickup "recommend[ed] adjusting the values of the properties to account for the 2021 [Appraisal Review Board (ARB)] Orders but decline[d] to change the assigned value of any properties where no such 2021 ARB Order was issued." SOAH-004690. On March 9, 2023, the Comptroller issued his Decision, in which he made numerous amendments to the ALJ's Proposal for Decision, concluded that Texas Government Code section 403.302(b)(4) authorizes ARB adjustments to "taxable value" but not to "productivity value," and found insufficient evidence to support Kenedy CSD's requested productivity value adjustments. SOAH-

004714 to SOAH-004728. Kenedy CSD filed an administrative appeal of the Comptroller's final Decision with the Travis County District Court, 353rd Judicial District, pursuant to Texas Government Code section 403.303(d). The district court affirmed the Comptroller's Decision in its entirety. CR-44. Kenedy CSD's Motion for a New Trial was denied on July 23, 2024. CR-117.

**STATEMENT REGARDING ORAL ARGUMENT**

The Comptroller does not believe that oral argument is warranted in this case. The issues that the trial court considered to resolve Kenedy CSD's administrative appeal are purely legal, and Kenedy CSD's appellate brief does not present any novel or complex question of statutory construction or interpretation. If the Court were nevertheless inclined to conduct oral argument, the Comptroller would request the opportunity to participate and answer the Court's questions.

## STATEMENT OF THE ISSUES PRESENTED

**TO THE HONORABLE COURT OF APPEALS**—

1. When conducting its PVS, the Comptroller is authorized by Texas Government Code section 403.302(b)(4) to make appropriate adjustments to its "taxable value" determinations to account for orders made by the local ARB. But Texas Government Code section 403.302(b)(4) does not similarly authorize adjustments to "productivity value" determinations. Did the Comptroller properly determine that it was precluded from making similar adjustments to its "productivity value" determinations to account for ARB orders?

## STATEMENT OF THE FACTS

The Comptroller's Property Tax Assistance Division (PTAD) carried out a statistical study of all property in the Kenedy County-Wide Common School District (Kenedy CSD or Appellant) to prepare the 2021 Property Value Study (PVS) required under Government Code Chapter 403. SOAH-004723. As part of the survey, PTAD made value determinations for a category of real property located within the school district known as "Qualified Open-Space Land" ("Property Category D1"), which is also referred to as "native pasture land." *Id.*[1]

Kenedy CSD then filed a petition with the Comptroller to protest certain preliminary findings in the 2021 PVS; in particular, it asserted fifty-two (52) objections related to the Comptroller's valuation of native pasture land, arguing that the value per acre set by PTAD for such land was too high, and sought a 15.31% reduction of the PTAD's overall value determinations for all such property. *Id.*; SOAH-000005 to SOAH-000035. In support of the requested change, it alleged that the Kenedy Central Appraisal District's (CAD) Appraisal Review Board (ARB) had adjusted D1 values in the district downward by a uniform 15.31% for D1 property owners that had appealed and sought a reassessment, and that the appealing property

---

[1] See also SOAH-000008 (listing the various categories of real property, including, for example, single family residential (Category A), multifamily residential (B), vacant lots and tracts (C1), qualified open-space land (D1), farm and ranch real improvements on qualified open-space land (D2), commercial real property (F1), oil and gas real property (G1), etc.).

owners held in the aggregate 86.6% of the Category D1 acreage in the district. SOAH-004638; SOAH-000009 to SOAH-000035. Kenedy CSD did, however, agree in its administrative challenge that PTAD's assigned values were accurately calculated and would otherwise reflect the correct value, but it argued that they had to be adjusted to account for 2021 local ARB Orders. SOAH-000059, SOAH-004645.

With PTAD and Kenedy CSD continuing to disagree on this point, the Comptroller filed a Notice of Referral to SOAH on August 4, 2022. SOAH-000001 to SOAH-000004. On November 2, 2022, the parties presented arguments and evidence to Administrative Law Judge (ALJ) Pickup. *See* SOAH-004729-4948. In her January 31, 2023 Proposal for Decision, ALJ Pickup recommended "adjusting the values of the properties to account for the 2021 ARB Orders," but she declined "to change the assigned value of any properties where no such 2021 ARB Order was issued." SOAH-004690.

On March 9, 2023, the Comptroller issued his Decision (SOAH004714 to SOAH-004728), which made numerous changes to ALJ Pickup's Proposal for Decision.[2] The Comptroller found, among other things, that Texas Government Code section 403.302(b)(4) authorizes ARB adjustments to "taxable value" but not

---

[2] The Comptroller set out his relevant findings of fact and conclusions of law in Section II ("Reasons for Decision") of his March 9, 2023 final Decision, a section which spans from SOAH-004719 to SOAH-004728.

to "productivity value," as those terms are defined in the Tax Code and discussed below. The Comptroller's Decision also found that, even if adjustments to "productivity value" based on ARB orders were permitted under the statute, Kenedy CSD had provided insufficient evidence to support its requested productivity value adjustments. SOAH-004714 to SOAH-004728 (in particular, SOAH-004725 to SOAH-004727). The final Decision reflects the Comptroller's finding that the evidence presented did not support Kenedy's protest because, in particular, it did not demonstrate that the adjustments made by the local ARB to Category D1 land forming the subject of property owner protests were uniform, or even that the ARB's adjustments had been restricted to Category D1 property.[3] SOAH-004723 to SOAH-004724.

Thereafter, on April 5, 2023, Kenedy CSD filed its Original Petition for judicial review of the Comptroller's Decision in the Travis County 353rd Judicial District Court. CR-3 to CR-8. The case was heard on May 22, 2024 before the Honorable Maya Guerra Gamble (RR-1), and Judge Gamble issued her Final Order affirming the Comptroller's Decision on that same date (CR-44). Following an unsuccessful motion for a new trial (filed on June 21, 2024 and denied on July 23, 2024 (CR-117)), Kenedy CSD brought this further appeal through its amended

---

[3] The protest, the ALJ hearing, the ALJ Proposal for Decision, and the final Comptroller Decision were all processes conducted in accordance with the Texas Administrative Code, Title 34, Part 1, Chapter 9, Subchapter L.

notice of appeal dated August 7, 2024 (RR-104).

## SUMMARY OF THE ARGUMENT

Kenedy CSD challenges the Comptroller's 2021 PVS for property located in the school district on the basis that the study's proposed productivity values should have been adjusted under Texas Government Code section 403.302(b)(4) to account for various ARB orders that had been issued lowering the productivity value of tracts containing native pasture land. But the statute upon which Kenedy CSD relies authorizes adjustments based on ARB orders only to "taxable value," which the Legislature distinguished from "productivity value" for purposes of the PVS. Because the values at issue are productivity values, the Comptroller lacked the authority to make the adjustments that Kenedy CSD proposed. In addition, Kenedy CSD conceded that the Comptroller's productivity values were accurate. The Comptroller's Decision should therefore be affirmed.

## ARGUMENT

### I.    Standard of Review

In an administrative appeal to a state district court challenging the Comptroller's PVS, the district court is required by the Texas Government Code to remand the protest determination to the Comptroller if "on review [it] discovers that substantial rights of the school district have been prejudiced" and that either "the comptroller has acted arbitrarily and without regard to the facts," or "the finding of

4

the comptroller is not reasonably supported by substantial evidence introduced before the court." Tex. Gov't Code § 403.303(d). When the Comptroller's protest determination is reviewed again at the court of appeals level, the standard of review is no more rigorous than that applied by the reviewing district court.

This is because the appellate court undertakes a *de novo* review of the trial court's application of the substantial evidence standard. *Michael Nazarian MD Assoc. LLC v. Aetna Life Ins. Co.*, No. 02-22-00109-CV, 2023 Tex. App. LEXIS 2796, at *12 (Tex. App. Fort Worth—Apr. 27, 2023, no pet.). "Whether an administrative agency's decision is supported by substantial evidence is a question of law, which [the court of appeals] review[s] *de novo*." *All by Grace Home Health Care v. Texas HHS Comm'n*, No. 08-22-00223-CV, 2023 Tex. App. LEXIS 6134, at *5 (Tex. App.—El Paso Aug. 14, 2023, pet. denied). This Court will, "[l]ike the trial court, … review whether the agency's findings of fact are supported by substantial evidence, and … review its legal conclusions for errors of law." *Id.*

To affirm the Comptroller's determination, the appellate court must merely satisfy itself that there was some reasonable basis for the complained-of decision; it need not concern itself with whether the decision was correct. *Michael Nazarian MD Assoc. LLC*, 2023 Tex. App. LEXIS 2796, at *12. An administrative decision may be sustained even when the balance of the evidence preponderates *against* it. *Id.* (citing Tex. Gov't Code § 2001.174).

In sharp contrast, a party that asks the appellate court to overrule the district court's substantial evidence review and to overturn the Comptroller's decision carries a high burden. Because the appellate court must uphold the decision if "there is any evidence to support it," an appellant seeking to have a decision overturned under a substantial evidence review faces a "formidable" burden of proof. *Id.* It has been affirmed repeatedly that a reviewing court is required to affirm the decision even when there is scarcely "more than a mere scintilla of evidence" supporting it. *Id.; see also Texas Dep't of Pub. Safety v. Franklin*, No. 04-98-00941-CV, 1999 Tex. App. LEXIS 6775, at *2-4 (Tex. App.—San Antonio, Sept. 8, 1999, no pet.).

Further, because the substantial evidence test is "a limited standard of review," it "gives significant deference to the agency in its field of expertise." *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). "The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise." *Texas Health Facilities Comm'n v. Charter Med.-Dallas*, 665 S.W.2d 446, 453 (Tex. 1984); *Dyer v. Texas Comm'n on Envtl. Quality*, 646 S.W.3d 498, 514 (Tex. 2022). "If there is evidence to support either affirmative or negative findings on a specific matter, the administrative decision must be upheld." *Franklin*, 1999 Tex. App. LEXIS 6775, at *4.

Regarding whether the agency "acted arbitrarily and without regard to the facts" – which is the alternate prong for reversal articulated in Texas Government Code section 403.303(d) – it is a highly deferential standard. The agency decision should only be overturned if "reasonable minds" could not have reached the conclusion the agency reached. *All by Grace Home Health Care*, 2023 Tex. App. LEXIS 6134, at *5; *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied) ("the proper test is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion that the agency must have reached to justify the disputed action"); *see also McKinley Iron Works v. Texas Emp't. Comm'n*, 917 S.W.2d 468, 470 (Tex. App.—Fort Worth 1996, no pet.) (same).

## II. The Comptroller's Decision Should Be Affirmed Because It Is "Reasonably Supported by Substantial Evidence" and the Comptroller Did Not "Act[] Arbitrarily and Without Regard to the Facts."

### A. Issue presented on appeal

Kenedy CSD stipulated that the PTAD's values are accurate. SOAH-000059,[4] SOAH-004645. Kenedy CSD's complaint is that the productivity values of native pasture land should have been adjusted under Texas Government Code section

---

[4] SOAH-000059 ("[Kenedy CSD] will not contest that the Comptroller of Public Accounts Property Tax Assistance Division's (PTAD) assigned values were accurately calculated and would otherwise reflect the correct values, but argues that these values should have been adjusted appropriately for Appraisal Review Board orders.").

7

403.302(b)(4) to take account of local ARB orders that had reduced the taxable value of tracts containing this type of land.

Given this, the dispute on appeal can be reduced to a single legal question: What value(s) does the language of Texas Government Code section 403.302(b)(4) authorize PTAD to adjust to account for ARB orders?

When an agency decision turns on the construction of a statute, the question of whether the agency properly construed the statute is a legal question that an appellate court reviews *de novo*. *Upper Trinity Reg'l Water Dist. v. National Wildlife Fed'n*, 514 S.W.3d 855, 862 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The appellate court's "primary concern is the express statutory language." *Id.* The court "applies the plain meaning of the text unless a different meaning is supplied by legislative definition." *Id.*

As explained below, the plain language of Texas Government Code section 403.302(b)(4) makes clear that the Comptroller is authorized to make adjustments to take account of ARB orders only with regard to "taxable value," and not concerning "productivity value."

**B.      The Comptroller must determine either "taxable value" or "productivity value," depending upon the type of property studied.**

The PVS is a study of property values in each school district designed to determine whether property is being accurately appraised by local taxing

jurisdictions. *See* Tex. Gov't Code §§ 403.301-.304. The State has an interest in ensuring that local taxing jurisdictions are not under-appraising, because the State has committed to supplement local education funds as necessary to ensure relatively equal levels of funding to all schoolchildren in Texas. *See Morath v. Texas Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 836-37 (Tex. 2016) (explaining Texas' school finance system). The purpose of the PVS is to ensure "equity among taxpayers in the burden of school district taxes," as well as equity among school districts in the "distribution of state financial aid for public education." Tex. Gov't Code § 403.301.

The Legislature directed the Comptroller to conduct the study of school district property values as follows:

> The study shall determine the ***taxable value*** of all property and of each category of property in the district ***and*** the ***productivity value*** of all land that qualifies for appraisal on the basis of its productive capacity and for which the owner has applied for and received a productivity appraisal.

*Id.* at § 403.302(a) (emphasis added).

The Comptroller is therefore required to determine one of two different values for each piece of property – "taxable value" or "productivity value" – depending on the type of property studied.

For most property, the Comptroller is required to determine its "taxable value." *Id.* § 403.302(a), (b). Within the specific context of the PVS, the Legislature

9

defined "taxable value" as market value less certain enumerated deductions. *Id.* § 403.302(d) ("For purposes of this section, 'taxable value' means the market value of all taxable property less …."). "Market value," in turn, is the price at which a property would sell on the open market in an ordinary arm's length transaction. Tex. Tax Code § 1.04(7); *see also Travis Cent. Appraisal Dist. v. FM Props. Operating Co.*, 947 S.W.2d 724, 727 (Tex. App.—Austin 1997, writ denied) ("[T]he traditional definition applied by Texas courts [is] that market value means the price property would bring when offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it.").

For certain agricultural and open space property, however, the Comptroller must instead determine its "productivity value." Texas Government Code section 403.302(a) sets out the relevant rule: "The [comptroller's] study shall determine … the productivity value of all land that qualifies for appraisal on the basis of its productive capacity and for which the owner had applied for and received a productivity appraisal."

Productivity value is not based on the price that a property would draw on the open market, but rather on the value of the agricultural products the property can produce. *See* TEX. CONST. art. VIII, §§ 1-d, 1-d-1; Tex. Tax Code § 23.41. Texas Tax Code section 23.41(a) provides that productivity value shall be determined

based on a five-year "net to land" average annual income per acre.[5] *See also* Tex. Tax Code § 23.51(4) (definition of "net to land"), § 23.52 ("Appraisal of Qualified Agricultural Land").[6]

Productivity value is thus often substantially less than market value. SOAH-004763 (testimony of Sarah Gutierrez); *see also, e.g.*, SOAH-00369 to SOAH-00372 (ARB Order 1 finding the total market value to be $15,650 but placing the final total appraised value and the total assessed value for the special appraisal agricultural land at $1,310).[7]

## C. The Comptroller has no authority to adjust "productivity value" to account for ARB orders.

### 1. Kenedy CSD's attempt to read the term "productivity value" into section 403.302(b)(4) is improper and unsupported.

When the Comptroller makes a "taxable value" determination based on market value – as is required for most property – he has the discretion under Texas Government Code section 403.302(b)(4) to make appropriate adjustments to that

---

[5] Texas Tax Code § 23.41(a) ("Land designated for agricultural use is appraised at its value based on the land's capacity to produce agricultural products. The value of land based on its capacity to produce agricultural products is determined by capitalizing the average net income the land would have yielded under prudent management from production of agricultural products during the five years preceding the current year.").

[6] The Texas Tax Code also instructs the Comptroller to promulgate rules specifying the methods and procedures for calculating productivity value, which are reflected in the Comptroller's Manual for the Appraisal of Agricultural Land and the Manual for the Appraisal of Timberland. Tex. Tax Code §§ 23.41(b), 23.51(4); 34 Tex. Admin. Code § 9.4001 ("Valuation of Open-Space and Agricultural Lands").

[7] This point appears uncontested. *See* Appellants Br. at 17 ("Specific to this appeal, if we own land used for agriculture as are the properties at issue, we know that it is taxed at productivity value, which is far less than market value.").

value to account for orders that were issued by the local ARB under Texas Tax Code section 41.43 following a section 41.41 protest. *See* Tex. Gov't Code § 403.302(b), (b)(4) ("[T]he comptroller shall determine the taxable value of property . . . ensuring that different levels of appraisal resulting from [ARB orders] are appropriately adjusted in the study.").

When, by contrast, the Comptroller makes a determination of "productivity value" – as is required for the native pasture land here in issue – he lacks such adjustment authority. The plain language of subsections 403.302(b) and 403.302(b)(4) makes clear that ARB adjustments may be made to "taxable value" only and not to "productivity value" because there is no mention of "productivity value" in the relevant statutory language:

(b)     In conducting the study, the comptroller shall determine the ***taxable value*** of property in each school district:

(1)     using, if appropriate, samples selected through generally accepted sampling techniques;

(2)     according to generally accepted standard valuation, statistical compilation, and analysis techniques;

(3)     ensuring that different levels of appraisal on sold and unsold property do not adversely affect the accuracy of the study; and

(4)     ensuring that different levels of appraisal resulting from protests determined under Section 41.43, Tax Code, are appropriately adjusted in the study.

*Id.* § 403.302(b) (emphasis added).

Kenedy CSD is therefore mistaken when it argues that section 403.302(b)(4) requires the Comptroller to adjust "productivity value" determinations to factor in ARB orders relating to such property. On the contrary, the above-quoted statutory provision applies by its terms only to the Comptroller's determinations of "taxable value," as the Comptroller himself found in his challenged Decision. SOAH-004725 to SOAH-004726.

Had the Legislature intended for section 403.302(b)(4) to apply to determinations of "taxable value" *and* "productivity value," it would have employed both terms: The Legislature demonstrated its ability to do so elsewhere in the statutory scheme. *See* Tex. Gov't Code § 403.302(a) (quoted in Section II.B, *supra*, and distinguishing between "taxable value" and "productivity value" assessments conducted in the course of a PVS).

The inclusion of the term "taxable value" in Texas Government Code section 403.302(b) and the omission of the term "productivity value" in that section can only be presumed to be intentional. " We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) ("We … presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.") (citation omitted)).

The district court appropriately declined Kenedy CSD's entreaty to read the term "productivity value" into section 403.302(b)(4). This Court should, too. "Productivity value" is absent from the provision, and it must be presumed that the Legislature purposefully chose to exclude it. *ExxonMobil v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017). "[A] court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written." *Id.* (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015)).

As seen, the statutory construction that follows from the combined reading of the preambular language (*i.e.*, "chapeau") of Texas Government Code section 403.302(b), which refers only to "taxable value of property," and the text of section 403.302(b)(4), which refers to possible adjustments based on ARB determinations but does not refer to adjustments to productivity value assessments, leads to the conclusion that adjustments to appraisals are permitted only in the context of market value assessments. This, in turn, leads to the result that the taxable value of the native pasture land in question here is equivalent *solely* to the productive value of that property, without any adjustment being possible. The district court's decision should be affirmed.

**2. The taxable value of the native pasture land is equal to its productivity value.**

The conclusion that the taxable value of the property at issue here is equal to its productivity value also follows directly, albeit mathematically, from a plain language reading of the preambular language of Texas Government Code section 403.302(d) in combination with subsection (d)(7).

Section 403.302(d)'s introductory language reads: "For purposes of this section, '*taxable value*' means the *market value* of all taxable property *less*: …" (emphasis added). This language is then followed by a list of fourteen items, with the only one relevant to the property placed in issue in this suit being subsection 403.302(d)(7). It reads: "the *difference* between the comptroller's estimate of the *market value* and the *productivity value* of land that qualifies for appraisal on the basis of its productive capacity, except that the productivity value estimated by the comptroller may not exceed the fair market value of the land" (emphasis added).

Tracking the precise language of these two code provisions, it is possible to express in mathematical terms the rules set out, when the property in question is all native pasture land and where:

$x$ = taxable value,
$y$ = market value,
$z$ = productivity value, and $y \geq z$ in all cases.

The statutory language can thus be expressed as follows:

15

$x = y - (y - z)$, which is equivalent to

$x - y = -(y - z)$, or

$x - y = -y + z$, or

$x = z$, or restoring the statutory terms in the place of the variables,

taxable value = productivity value.

In sum, in the case of the native pasture land under review in this case, the taxable value is equivalent to the productivity value. Because there is more than a reasonable basis for this conclusion, because reviewing courts should defer to the exercise of agency judgment when acting within their subject matter of expertise, and because it is impossible to find that "reasonable minds" could not have reached this conclusion, there is no basis to conclude that the Comptroller "acted arbitrarily and without regard to the facts," or that his conclusions are not "reasonably supported by substantial evidence introduced before the court." The district court's decision should be affirmed.

3. **Although Kenedy CSD misstates the Comptroller's position, taxable value, market value, and productivity value remain distinct concepts.**

Despite the foregoing, Kenedy CSD in its brief claims to summarize the Comptroller's position on Texas Government Code section 403.302(d) as follows: "[The Comptroller] claims that § 403.302(d) defines taxable value as market value,

not productivity value."[8] Appellant's Br. at 15. Kenedy CSD then characterizes the Comptroller's supposed position as "baseless, misleading and arbitrary." *Id.*

Yet, Kenedy CSD's so-called summary misrepresents or, at a minimum, misleadingly truncates the Comptroller's arguments, as it fails to account for the fact that (as just demonstrated) section 403.302(d)(7) lays out a *special rule* for valuing land that is to be appraised on the basis of productive capacity – and for the fact that that rule defines the taxable value of such land as being equivalent to its productivity value, ***to the exclusion of any consideration of market value***.

Kenedy CSD also suggests that the Comptroller's postulate that section 403.302(b)(4) adjustments are not permitted concerning property assessed using productivity value is undermined by the language of section 403.302(d)(7). Appellant's Br. at 16-17. But this, too, is far from the case.

The first sentence of Texas Government Code section 403.302(a) instructs the Comptroller to "conduct a study using comparable sales and generally accepted auditing and sampling techniques to determine the total taxable value of all property in each school district" (*i.e.*, a study that perforce takes account of market values). Tex. Gov. Code § 403.302(a). That same provision also makes clear that this assessment is a separate and distinct process from the valuation of land appraised

---

[8] *See also id.* at 16 ("By interpreting § 403.302(d) as defining 'taxable value' as only market value, Comptroller ignores …."); *id.* at 16 ("It is frankly incredible for PTAD to argue that taxable [value] means only market value.").

17

based on productive capacity. Indeed, section 403.302(a)'s second sentence confirms that the PVS "shall determine the taxable value of all property and of each category of property in the district *and the productivity value of all land that qualifies for appraisal on the basis of its productive capacity*." (emphasis added)

Further, as just demonstrated mathematically, section 403.302(d)(7) *explicitly removes market value considerations from taxable value assessments* when the property being considered is valued based on its productive capacity (such as Category D1 land). It does so, as seen, by laying out a rule that defines "taxable value" as being equal in such cases to "productivity value."[9]

\* \* \*

Because the Comptroller is not legally authorized under the applicable statutory scheme to adjust the taxable value to take account of any ARB orders that modify the productivity values of native pasture land, it would have been improper for the Comptroller to take those orders into account. No further response is therefore necessary or appropriate to Section B.(2), pp. 19-21 of Appellant's Brief. The district court's decision should be affirmed.

---

[9] As explained in Section III.C.2, the statute accomplishes this by defining taxable value for native pasture land as equivalent to the market value less the difference between the market value and the productivity value of that land (which cannot be greater than the market value). This is a just another way of saying that in these cases the taxable value *is* the productivity value.

**D.** **The Comptroller's manuals are consistent with the statutory scheme, which authorizes ARB adjustments to "taxable value" only.**

Kenedy CSD continues to maintain in its Brief that the Comptroller's manuals that refer to PVS require the agency to make ARB adjustments not only to "taxable value," but also to "productivity value." However, Kenedy CSD appears now to accord less place to this argument than in earlier phases of the administrative appeal, and it limits itself to a single reference to a single Comptroller manual.

More specifically, as support for its claim that the Comptroller "knows that it is required to adjust taxable values for property reduced by ARB orders," Appellant's Br. at 18, Kenedy CSD highlights a single sentence extracted from "The School District Property Value Study and How to Protest" manual that reads: "If the CAD [Central Appraisal District] provides documentation that the local value of any property in the School District PVS sample was determined by the appraisal review board, PTAD will adjust its value of the property as required by Government Code Section 403.302(b)(4)." SOAH-000070 (quoted at Appellant's Br. at 18).

As a threshold matter, the Comptroller's manuals cannot contradict the plain language of Texas Government Code section 403.302(b)(4). Thus, even if there were some conflict between the statute and the Comptroller's manuals (there is not), this fact would not advance Kenedy CSD's case. This Court would be bound, just as the Comptroller is, to respect the statute and to ignore the manuals to the extent of any inconsistency. But the referenced manual is consistent with the statutory scheme.

19

A review of the full version of the School District Property Value Study and How to Protest manual shows that the single sentence about adjusting values for ARB orders on which Kenedy CSD relies applies only to the calculation of "taxable value" – it is located in the section that carries the heading "Calculating Taxable Value – Overview." SOAH-000971 (section title); SOAH-000973 (subsection cited by Appellant). This portion of the manual thus has no bearing on the determination of "productivity value," which is the only value at issue in this case. Nor could the manual contradict the plain language of Texas Government Code section 403.302(b)(4). *See TGS-NOPEC*, 340 S.W.3d at 438 (agency interpretations cannot contradict statutory language ); TEX. CONST. art 2, § 1 (separation of powers).

In addition, and importantly, the section of the manual in which Category D1 property is addressed – the section entitled "Qualified Agricultural Land" and found at pages 13 to 14 of the manual (SOAH-000980 to SOAH-0000981) – logically makes *no mention* of adjusting productivity values to account for ARB orders. Further, the manual's Exhibit 13 presents a chart entitled "Examples of Protest Issues." The chart identifies an "appraisal review board (ARB) decision" as a protest ground for single-family residential property (Category A), multifamily residential property (Category B), "Rural Land, not Qualified for Open-Space Appraisal, and Improvements" (Category E), and Commercial real property (Category F1), but it *does not list* ARB decisions as a protest ground for "Qualified Open-Space Land"

(Category D1). SOAH-000988.

The Comptroller reached the identical conclusion in his Decision, finding that the language on which Kenedy CSD relies "***relates to*** sampled properties individually ***appraised at market value***, rather than to qualified open-space land appraised by category ***based on productivity value***." SOAH-004727 (emphasis added). The district court properly affirmed the Comptroller's decision, and this Court should also affirm.

**E.      In the alternative, Kenedy CSD failed to prove the amount of its proposed ARB adjustment.**

In the alternative, in the event that the Court were to find that the Comptroller was required to adjust productivity values to account for ARB orders, the Comptroller's Decision must be upheld because Kenedy CSD failed to prove at any stage of its administrative challenge the amount of any appropriate adjustment.

To conduct a PVS, the Comptroller is required to value *all* native pasture in the relevant school district. Tex. Gov't Code § 403.302(a) (providing that the PVS shall determine the "productivity value of all land that qualifies for appraisal on the basis of its productive capacity and for which the owner had applied for and received a productivity appraisal"). Yet, the ARB orders upon which Kenedy CSD relies did not concern all native pasture land in the district, but rather only a portion of that land. *See* SOAH-004873, SOAH-004884 (testimony of Robby Harbuck). The Comptroller's Decision noted in this regard that "[a]ccording to [Kenedy CSD],

21

there are 642,971 D1 native pasture acres in Kenedy County, but only 556,840 acres were the subject of ARB protests." SOAH-004723.

Equally important, some of the ARB orders at issue concerned parcels that included both native pasture and *other types* of property, and when the ARB orders reduced the value of the entire parcel, they did not specify what portion of the reduction, if any, was attributable to native pasture as opposed to other types of property in the parcel. *See* SOAH-004831 to SOAH-004840 (testimony of Gary Zeitler); SOAH-004884 to SOAH-004886 (testimony of Robby Harbuck).

Finally, some of the ARB orders that Kenedy CSD relied upon actually *increased* the value of the entire parcel, which is not consistent with Kenedy CSD's proposed reduction of 15.31% for all native pasture in the district. *See* SOAH-000461, SOAH-000464, SOAH-000622.

It was thus simply not possible to determine from the evidence in the record the percentage adjustment to which Kenedy CSD would have been entitled even if the Legislature had authorized ARB adjustments to productivity value. *See* SOAH-004831 to SOAH-004840 (testimony of Gary Zeitler). Indeed, in his Decision, the Comptroller concluded that

> it is not possible to identify the amount of the ARB's value adjustments that reflects changes in the productivity value for the protested property as opposed to changes in value related to reclassification of portions of the protested property by simply looking at the ARB orders, Notices of Appraised Value, or ARB meeting minutes.

SOAH-004723 to SOAH-004724.

For the foregoing reasons, Kenedy CSD did not meet its high burden of showing that the Comptroller's values were not reasonably supported by substantial evidence, or that the Comptroller acted arbitrarily and without regard to the facts. Tex. Gov't Code § 403.303(d). Kenedy CSD stipulated that the Comptroller's values were accurate, SOAH-000059, SOAH-004645, and the evidence introduced in the record did not support Kenedy CSD's proposed ARB adjustment of 15.31% for all native pasture in the district.

The Comptroller's Decision and the trial court's Final Order in this case should therefore be affirmed, even if this Court were to conclude that Texas Government Code section 403.302(b)(4) requires, when appropriate evidentiary support exists, that adjustments be made to "productivity values" to account for ARB orders concerning property subject to appraisal based on productive capacity.

## PRAYER

The Comptroller respectfully requests that the Court affirm the decision of the trial court.

**Dated:** February 28, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief, General Litigation Division

THOMAS BEVILACQUA
Texas Bar No. 00793342
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel : (512) 936-1162
Fax: (512) 320-0667
thomas.bevilacqua@oag.texas.gov

Counsel for Appellee

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Brief of Appellee complies with Texas Rule of Appellate Procedure 9.4(i). The text is set to 14-point and the number of words in the document as calculated by the word count feature of Microsoft Word is 5,778.

*/s/ Thomas Bevilacqua*
Thomas Bevilacqua
Assistant Attorney General

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been served on all counsel of record in accordance with the Texas Rules of Appellate Procedure on February 28, 2025 through the electronic filing system.

Judith Hargrove
judy@hargrovelawtx.com

Jim L. Lambeth
Jim.Lambeth@lgbs.com

*/s/ Thomas Bevilacqua*
Thomas Bevilacqua
Assistant Attorney General

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Troy Sager on behalf of Thomas Bevilacqua
Bar No. 793342
troy.sager@oag.texas.gov
Envelope ID: 97931128
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 20250228_Defs Appellee Brief
Status as of 2/28/2025 1:58 PM CST

Associated Case Party: Kenedy County Wide Common School District

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jim LLambeth | | Jim.Lambeth@lgbs.com | 2/28/2025 1:51:09 PM | SENT |
| Sharita Morrow | | Sharita.Morrow@lgbs.com | 2/28/2025 1:51:09 PM | SENT |
| Ethan Ranis | 24098303 | ethan.ranis@lgbs.com | 2/28/2025 1:51:09 PM | SENT |
| Judith Hargrove | 11595050 | judy@hargrovelawtx.com | 2/28/2025 1:51:09 PM | SENT |
| Richard Brand | | richard.brand@lgbs.com | 2/28/2025 1:51:09 PM | SENT |

Associated Case Party: GLENN HEGAR, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thomas Bevilacqua | | thomas.bevilacqua@oag.texas.gov | 2/28/2025 1:51:09 PM | SENT |
| Troy Sager | | troy.sager@oag.texas.gov | 2/28/2025 1:51:09 PM | SENT |